Argued February 22, affirmed May 8, reconsideration denied June 14, memorandum in opposition allowed October 10, 284 Or 80 (1978)

STATE OF OREGON, *Respondent,*
*v.*
WILLIAM EARL ROPER, *Appellant.*
(No. C77-04-05664, CA 9261)
578 P2d 479

Thomas J. Crabtree, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Thomas H. Denney, Salem, argued the cause for respondent. On the brief were James A. Redden, Attorney General, Al J. Laue, Solicitor General, and Melinda L. Bruce, Assistant Attorney General, Salem.

Before Schwab, Chief Judge, and Lee, Richardson and Joseph, Judges.

JOSEPH, J.

**JOSEPH, J.**

Defendant appeals his conviction of conspiracy to commit robbery in the first degree. ORS 161.450.[1] He assigns as error the denial of a motion for judgment of acquittal and the exclusion of the testimony of four witnesses. The motion for acquittal was based on two grounds: first, the purported failure of the state to prove venue in Multnomah County and, second, the failure of the state to prove an agreement to rob the specific victim named in the indictment.

■ On March 2, 1977, Billy Ray Small and Lynette Repp had a conversation in Multnomah County concerning the prospects of robbing a certain business firm located in that county. Defendant was not present. During the succeeding days, Small, Repp, defendant and others met several times and developed a plan for robbing the store. All of those meetings took place at Small's home in Clackamas County. The evidence sufficiently established that during the course of one of the meetings defendant agreed to take part in the robbery and that he so agreed with the requisite intent.

The robbery was committed on March 8, and there was some evidence that defendant was actually among the robbers. The robbery did not go as planned. The woman whom Repp had said would be able to open the safe had gone home earlier than usual that evening. No other employee could open the safe. Another employee did give the robbers money that was in the cash drawer.

Defendant argues that the state failed to prove venue in Multnomah County. He contends that the conspiracy was complete when he entered into an

---

[1] ORS 161.450(1):

"A person is guilty of criminal conspiracy if with the intent that conduct constituting a crime punishable as a felony or a Class A misdemeanor be performed, he agrees with one or more persons to engage in or cause the performance of such conduct."

agreement with the others in Clackamas County. ORS 131.305(1), the general venue section, provides:

"Except as otherwise provided in ORS 131.305 to 131.415, criminal actions shall be commenced and tried in the county in which the conduct that constitutes the offense or a result that is an element of the offense occurred."

ORS 131.315(9) provides:

"If the offense is criminal conspiracy, trial of the offense may be held in any county in which any act or agreement that is an element of the offense occurs."

An overt act in furtherance of the conspiratorial purpose is no longer an element of criminal conspiracy in Oregon.[2] Therefore, applying the language of ORS 131.315(9) literally, venue could lie only in Clackamas County.

It might well have been, however, that in enacting ORS 131.315(9) as a "special" venue provision for conspiracy the legislature intended to permit the trial of a criminal conspiracy case in any county where an agreed upon substantive crime was committed or where an overt act in furtherance of the crime was performed, as well as where the agreement was made. Considering the difficulty of proving where the agreement itself was reached in some cases, the legislature may have determined that a venue provision broader than the general one in ORS 131.305 was necessary.[3] If that was not the intent, it is difficult to understand why ORS 131.315(9) was enacted at all; but if that was the intent, the language was ill chosen.

[2]ORS 161.450. The Proposed Oregon Criminal Code 59-60, Commentary, § 59 (1970), says:

"The gravamen of a conspiracy is recognized as the coming together of two or more persons which may greatly increase the chance that the substantive crime contemplated will be consummated. * * *"

[3]For the purpose of applying the statute of limitations, conspiracy is considered

"* * * a continuing course of conduct which terminates when the crime or crimes which are its object are completed or the agreement that they be committed is abandoned by the defendant and by those with whom he conspired." ORS 161.465(1).

Contrary to defendant's argument, the proper interpretation of ORS 131.315(9) is not an issue we need reach in this case. ORS 131.315(10) provides:

> "A person who in one county commits an inchoate offense that results in the commission of an offense by another person in another county * * * may be tried in either county."

Conspiracy is one of the inchoate crimes defined in ORS ch 161. The result of the conspiracy in this case, the store robbery, was within the language of ORS 131.315(10), and so the case was properly tried in Multnomah County.

■ As his second ground for acquittal defendant asserted that the state failed to prove the intended victim of the robbery was one Mayciel Reagan, as alleged in the indictment. It is true that there was no evidence that Mayciel Reagan had been mentioned by name during the planning of the robbery. As an employee of the store she was among the class of persons contemplated as victims. A variance between indictment and proof does not constitute reversible error unless the variance has misled or prejudiced a defendant in presenting a defense or has exposed him to the possibility of being put twice into jeopardy for the same offense. *State v. Schindler,* 20 Or App 400, 531 P2d 915, *rev den* (1975); *State v. Hanson/Hughes,* 14 Or App 586, 513 P2d 1202, *rev den* (1973). Defendant does not contend that he was prejudiced in any way by the allegation of a specific targeted victim. The motion for judgment of acquittal was properly denied.[4]

■ Finally, defendant assigns as error the refusal of the circuit court to allow four proffered defense witnesses to testify. That testimony, it was represented, would have established that defendant was not with

---

[4] Although it is not specifically applicable here, the language of ORS 135.725 illuminates the general policy of the criminal code in this respect:

> "When a crime involves the commission of or an attempt to commit a private injury and is described with sufficient certainty in other respects to identify the act, an erroneous allegation as to the person injured or intended to be injured is not material."

the other robbers at Small's house immediately after the robbery, as two state's witnesses had testified, but had taken a cab to the house of another friend, where he remained for at least two hours.

The trial court stated two alternative grounds for excluding the testimony. First, the court ruled that the defendant had failed to comply with the provisions of ORS 135.455(1),[5] requiring notice of intent to rely upon alibi witnesses, and had shown no good cause for the noncompliance. Defendant argues that the testimony was not within the ambit of ORS 135.455(2):

"As used in this section 'alibi evidence' means evidence that the defendant in a criminal action was, at the time of commission of the alleged offense, at a place other than the place where such offense was committed."

We agree with defendant on this point. The conspiracy was complete when defendant agreed with the others to rob the store. Although the proffered testimony concerned defendant's whereabouts, it did not relate to "* * * the time of commission of the alleged offense."

The trial court, however, stated an alternative ground for its ruling:

"* * * You propose to offer witnesses who will testify, challenging certain statements and testimony of State's witnesses of events that occurred subsequent to the alleged robbery.

"That is not the [sic] element of the crime we are talking about. * * * And your witnesses are witnesses who would be testifying to facts after the event."

_____

[5] ORS 135.455(1):

"If the defendant in a criminal action proposes to rely in any way on alibi evidence, he shall, not less than five days before the trial of the cause, file and serve upon the district attorney a written notice of his purpose to offer such evidence, which notice shall state specifically the place or places where the defendant claims to have been at the time or times of the alleged offense together with the name and residence or business address of each witness upon whom the defendant intends to rely for alibi evidence. If the defendant fails to file and serve such notice, he shall not be permitted to introduce alibi evidence at the trial of the cause unless the court for good cause orders otherwise."

It is in the sound discretion of the trial court to exclude evidence when the probative value, if any, of the evidence would be outweighed by its tendency to confuse the jury or to consume an undue amount of time. *See State v. Krummacher,* 269 Or 125, 523 P2d 1009 (1974). When the evidence in question is offered to rebut evidence presented by the opposing party and received without objection, as here, the admissibility of the answering evidence remains within the trial court's discretion. *See Wynn v. Sundquist,* 259 Or 125, 485 P2d 1085 (1971). In exercising that discretion the court should consider, in addition to time consumption and possible confusion, the effect of the previously admitted evidence. *See generally,* McCormick, Evidence 132-33, § 58 (2d ed E. Cleary 1972). In this instance the prior evidence concerning defendant's whereabouts after the robbery was not material to the conspiracy charge and was unlikely in itself to have a significant prejudicial effect upon a properly instructed jury.

Nevertheless, defendant argues, the testimony should have been received because by impeaching the state's witnesses in regard to defendant's whereabouts immediately after the robbery, it tended to cast doubt upon the credibility of other parts of their testimony, including their testimony concerning defendant's agreement to take part in the robbery. Because of its tendency to confuse the jury and to prolong the trial, evidence offered solely for the purpose of contradicting a witness in regard to a collateral matter is disfavored. *See* McCormick, *supra,* at 97-100, § 47. The decision whether or not to admit such evidence lies within the trial court's discretion. ORS 41.230;[6] *Flande v. Brazel,* 236 Or 156, 386 P2d 920 (1963).

---

[6]ORS 41.230:

"Evidence shall correspond with the substance of the material allegations, and be relevant to the questions in dispute. Collateral questions shall be avoided. However, the court may permit inquiry into a collateral fact, when such fact is directly connected with the question in dispute, and is essential to its proper determination, or when it affects the credibility of a witness."

In some circumstances the contradiction of testimony concerning a collateral fact—a fact which the proponent of the contradictory testimony would not have been entitled to prove independent of the contradiction—may cast serious doubt upon the credibility of testimony concerning material matters. McCormick characterizes such a collateral fact as the "linchpin" of the witness' story, a fact "which as a matter of human experience he would not have been mistaken about if his story were true." McCormick, *supra,* at 99. The collateral fact which this defendant sought to contradict was not of that type. The proffered evidence would have tended only to show that defendant did not join the others at Small's house until later in the evening. It would not have cast significant doubt upon testimony concerning defendant's agreement to participate in the robbery. We therefore conclude that the trial court did not abuse its discretion in excluding the testimony.

Affirmed.