Argued April 23, reversed May 21, 1918.

McNAMEE v. FIRST NAT. BANK OF ROSEBURG.

(172 Pac. 801.)

**New Trial—Conflicting Evidence.**

1. In a depositor's action against a bank to recover a deposit alleged to have been wrongfully withdrawn by a third person, where there was evidence on both sides as to the issue of such third person's authority, the question was for the jury, and the court below was powerless to set the verdict aside as not justified by the evidence.

**Witnesses—Privileged Communications—Waiver.**

2.  In a depositor's action against a bank to recover a deposit which the bank claimed it had paid to a third person on plaintiff's authority, a letter written by him to an attorney, offering to engage his services and referring to the investment of the money withdrawn, was not privileged as a communication between client and attorney within Section 733, subdivision 2, L. O. L., in view of Section 734, providing that if a party offer himself as a witness, it is to be deemed a consent to the examination, also of an attorney, etc., on the same subject, the plaintiff having appeared as a witness in his own behalf and having testified to the bank's indebtedness, which was the subject on which the letter was offered.

[As to what attorneys may not testify to, as being privileged, see notes in 36 Am. St. Rep. 631; 66 Am. St. Rep. 213.]

From Douglas: James W. Hamilton, Judge.

Between January 22, 1906, and November 18, 1910, G. P. McNamee deposited $6,057.92 with the First National Bank of Roseburg, and he withdrew $3,101.32, leaving a balance of $2,956.60 which he is attempting to recover in this action.   The bank defended by averring that the alleged balance of $2,956.60 had been withdrawn by T. P. Sheridan pursuant to authority conferred upon him by the plaintiff.   There was a verdict and judgment for the defendant; but upon the motion of the plaintiff the court set aside the verdict and judgment and granted a new trial, and the defendant appealed.                                      Reversed.

For appellant there was a brief and an oral argument by *Mr. Oliver P. Coshow.*

For respondent there was a brief over the names of *Mr. Frank G. Micelli* and *Mr. John T. Long,* with an oral argument by *Mr. Micelli.*

Department 1.

HARRIS, J.—Under date of February 9, 1913, the plaintiff mailed to O. P. Coshow, an attorney residing at Roseburg, a letter, the language of which is as follows:

"Enclosed please find the copy of three letters which I received from Mr. T. R. Sheridan in regard to money which he drew out of the First National Bank of Roseburg to loan for me, also one from the Bank Examiner. Now, this money was taken out very near two years ago and I have not received any interest on it. Mr. Sheridan has not as yet sent me anything to secure me or informed me who he loaned it to although I wrote him two letters, the first he answered as you will see, the other he has not answered yet although I wrote him over a month ago.

"I wish you would see him or whoever represents him and find out who has the money and what security he has for it.

"I also wish you would look after this for me. See that I get proper security for it. The party who ever has it may have it for two or three years longer by giving good security in the way of mortgage by paying the interest.

"Let me know as soon as possible if you can do anything for me. If you want the original of those letters, let me know and I will send them to you."

Mr. Coshow, who was acting as attorney for T. R. Sheridan and had for some time been the attorney of record for the bank in certain proceedings, promptly answered and declined to represent Mr. McNamee "because of conflicting interests." Referring to the letter addressed to Mr. Coshow, the plaintiff testified thus:

"I endeavored to employ Mr. Coshow as my attorney. He, being Mr. Sheridan's attorney replied back that he could not handle the case. Then I employed another attorney."

This action was commenced in July, 1915. Mr. Coshow appeared as the attorney of record for the defendant in this action.

The plaintiff was called as a witness in his own behalf and on his direct examination he testified that he had on deposit in the bank a balance of $2,956.60

which he had never withdrawn "either directly or indirectly." On cross-examination he was shown the letter which he had written to Mr. Coshow and upon being asked under what circumstances he had written it he answered: "I wrote it to him, asking him to take my case up and see if he could not get my money." The defendant then offered the letter in evidence. The plaintiff objected "upon the ground that it relates to a matter between an attorney and client and is confidential"; but the court received the letter and allowed the plaintiff an exception. On redirect examination the plaintiff testified that he never gave Sheridan authority to withdraw the money from the bank; and, again, when called in rebuttal as a witness in his own behalf the plaintiff testified generally upon the same subject.

The motion for a new trial assigned three grounds for setting aside the verdict.

"1st.   That the evidence introduced by the defendant in the trial of said cause is insufficient to support the verdict or justify the same.

"2d.   That said verdict is contrary to the evidence and against the law.

"3d.   That there was error in law occurring at the trial of said cause and excepted to by plaintiff in this:

"First.   That the court erred in permitting the introduction in evidence, over plaintiff's objection, the letter written by the plaintiff, G. P. McNamee, to Attorney O. P. Coshow, which said letter being designated as defendant's exhibit 'C' for the reason that said letter was a privileged communication between an attorney and client, and that the same was wholly inadmissible in the trial of said cause; that by reason of the introduction of said communication and letter plaintiff's cause was prejudiced in the trial of said cause before the jury."

1. Briefly stated, the issue made by the pleadings is whether or not McNamee had authorized Sheridan to withdraw the money. If there was evidence upon both sides of the issue it was the duty of the court to submit the question to the jury for decision; and after the jury decided the question the court could not disturb the verdict even though the court believed it to be against the weight of evidence: *Sullivan* v. *Wakefield,* 65 Or. 528, 535 (133 Pac. 641). The record presented to us does not contain any of the evidence received at the trial except the testimony of the plaintiff and certain exhibits; and although the bill of exceptions is not accompanied by all the evidence nevertheless it does disclose some evidence upon which the jurors could have rested their conclusion; and consequently the court was powerless to set aside the verdict on either of the first two grounds specified in the motion for a new trial: *Kahn* v. *Home Tel. & Tel. Co.,* 78 Or. 308, 315 (152 Pac. 240).

2. Although Mr. McNamee merely attempted to employ Mr. Coshow as an attorney, it may be assumed, for the purposes of the instant case, that the latter was ''an attorney'' and the former was ''his client'' within the meaning of Section 733, subdivision 2, L. O. L., and that the letter addressed to the attorney was a privileged communication entitled to the protection of the statute: 10 Ency. of Ev. 230; 40 Cyc. 2366. However, Section 734, L. O. L., provides that—

''If a party to the action, suit, or proceeding offer himself as a witness, that is to be deemed a consent to the examination also of a wife, husband, attorney, clergyman, physician, or surgeon on the same subject, within the meaning of subdivisions 1, 2, 3, and 4 of the last Section.''

When the plaintiff appeared as a witness in his own behalf and testified that the bank had $2,956.60 of his

money which he had never withdrawn "either directly or indirectly" he must be deemed to have consented to the examination of the attorney "on the same subject," because it is manifest that the written communication is "on the same subject" concerning which the plaintiff testified on his direct examination. The very moment the communication was uttered the law covered it with a shield for the purpose of protecting the plaintiff, but when he removed the shield by appearing as a witness for himself the communication ceased to be protected and became subject to judicial view, and hence it could be disclosed by cross-examining the plaintiff or by calling the attorney as a witness: *Fowler* v. *Phoenix Ins. Co.,* 35 Or. 559, 568 (57 Pac. 421) ; *Young's Estate,* 59 Or. 348, 354 (116 Pac. 95, 1060, Ann. Cas. 1913B, 1310); *Forrest* v. *Portland Ry. L. & P. Co.,* 64 Or. 240, 244 (129 Pac. 1048); *Gerlinger* v. *Frank,* 74 Or. 517, 520 (145 Pac. 1069).

Our statute is more liberal than the statutes of most of the states which have legislated upon the subject of waiver. Ohio and Oklahoma, however, have statutes similar to Section 734, L. O. L., and the courts of those two states have given the same construction to their respective statutes as we have to ours: 5 Page and Adams' Annotated Ohio General Code, § 11,494; *King* v. *Barrett,* 11 Ohio St. 261; *Duttenhofer* v. *State,* 34 Ohio St. 91 (32 Am. Rep. 362) ; 2 Rev. Laws of Oklahoma (1910), § 5050; *City of Tulsa* v. *Wicker,* 42 Okl. 539, 541 (141 Pac. 963).

It was error to set aside the verdict of the jury and the judgment appealed from is therefore reversed.

Reversed.

McBride, C. J., Benson and Burnett, JJ., concur;