Argued September 9; reversed September 22, 1936

## BARTNIK *v.* MUTUAL LIFE INSURANCE CO. OF NEW YORK

(60 P. (2d) 943)

*Ralph H. King,* of Portland (McCamant, Thompson & King, of Portland, on the brief), for appellant.

*Mark V. Weatherford,* of Albany, and *N. M. Newport,* of Lebanon, for respondent.

BELT, J. This is an action to recover upon an insurance policy issued by the defendant The Mutual Life Insurance Company of New York upon the life of Leonard J. Bartnik. At the conclusion of plaintiff's case in chief, the defendant moved for a nonsuit and, upon denial of such motion, each party moved for a directed verdict. The trial court allowed plaintiff's motion and entered judgment in accordance therewith. From such judgment the defendant appeals.

The vital question is whether the evidence tends to support the judgment. A brief statement of the facts will suffice.

The first quarterly premium of $8.83 was paid at the time of the delivery of the policy by the defendant's agent, E. B. Carey. The second quarterly payment under the terms of the policy was due on the 15th day of August, 1934, with a provision of thirty-one days' grace. This second quarterly payment was not made at the due date nor within the thirty-one days thereafter. The policy therefore lapsed on September 15, 1934.

On September 18, 1934, Bartnik gave the agent E. B. Carey the following order on his employer Rupert E. Stewart, in payment of the premium due:

"Please deduct out of my wages earned in the month of September, 1934, the sum of $15.60 and pay same to the Massachusetts Bonding & Insurance Company of Boston, Massachusetts, or its authorized solicitor, E. B. Carey."

The Massachusetts Bonding & Insurance Company had issued an accident policy on Leonard J. Bartnik through its agent, E. B. Carey. It is the contention of the plaintiff that the order covered the premiums due on both policies. On the same day that the order was given, the employer Rupert E. Stewart gave the agent Carey a check for $7.50 and agreed to pay the balance of the amount specified in the order on the following Saturday. There is evidence, received over the objection of the defendant, that, at the time the order was given, the agent Carey told Bartnik his insurance was paid in full.

On October 9, 1934, the insured sustained accidental injuries resulting in his death on the same day. On the following day, October 10, 1934, the agent Carey

called at the home of Stewart and the latter's wife gave him $8.10 to pay the balance due on the order. About three days thereafter, Carey returned such money to Stewart stating that the "company wouldn't allow him to keep it".

Did Carey, the agent, have real or apparent authority to reinstate this policy after it had lapsed for nonpayment of the premium? The policy explicitly provides that it "shall immediately cease and become void" if premiums are not paid before the end of the days of grace. It also provides therein that no agent except the president, vice-president or secretary of the company has the authority to extend the time for payment of a premium or to "waive any lapse or forfeiture".

The insured was bound to know the terms of his policy. It is the contention of the plaintiff beneficiary, however, that, regardless of the limitation of the agent's authority as provided in the policy, the insurance company through its course of dealing held its soliciting agent out as having authority to so act and that it should be estopped to assert the contrary.

■ Plaintiff's case is based largely upon the alleged statements of the defendant company's agent, Carey. It is fundamental that the acts or declarations of an agent are not competent to prove agency or the scope of the agent's authority: *Ramsey v. Wellington Company,* 114 Or. 355 (235 P. 297), and cases therein cited.

■ There is no evidence tending to show that the defendant insurance company had any knowledge of the acts or declarations of its soliciting agent relied upon by plaintiff to show a waiver of the forfeiture clause of the policy. Neither does the evidence tend to show any ratification of an unauthorized act. The evidence

does not show that the defendant accepted payment of the premium in question. It does show, however, that the agent returned the money because the company would not allow him to keep it. The record fails to disclose any case wherein the company ever acquiesced in the act of its agent Carey in accepting payment of a premium after the policy had lapsed.

As an abstract proposition we agree with the legal theory of counsel for respondent that an insurance company may by its conduct or course of dealing be estopped to rely upon the limitation of authority of its agents as provided in a policy. However, the legal principals invoked have no application to the facts.

Carey had no real or apparent authority to accept payment of the premium after the policy had lapsed. It follows that the motion of the defendant for a directed verdict should have been allowed.

The judgment is reversed and the action dismissed.

CAMPBELL, C. J., not sitting.